# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

_____

NANCY R. LAMON,

      **Petitioner,**

  -vs-                                                                       **Case No. 04-C-873**

**JODINE DEPPISCH,** Warden,
Taycheedah Correctional Institution,

      **Respondent.**

## DECISION AND ORDER

On September 30, 2004, petitioner, Nancy R. Lamon filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Her petition is based on one claim. Lamon alleges that the state's peremptory strike of a potential juror was in violation of the test established under *Batson v. Kentucky*, 476 U.S. 79, 96-98 (1986). In support of her petition, Lamon also filed motions for discovery and an evidentiary hearing, pursuant to Rules 6 and 8 of the Rules Governing § 2254 Cases in the United States District Courts. After reviewing the parties' memorandums and the state court record, the Court denies Lamon's motions for an evidentiary hearing and discovery, and also denies Lamon's petition for a writ of habeas corpus.

1

## BACKGROUND

Lamon, an African American, is a Wisconsin state prisoner incarcerated at Taycheedah Correctional Institution in Fond du Lac, Wisconsin. On April 15, 1999, she was convicted by a jury for armed robbery in violation of Wis. Stat. § 943.32(1)(b) & (2) (2000).

On April 14, 1999, during jury selection, the state used a peremptory strike to strike venire person Dondre Bell. Lamon's attorney made a *Batson* challenge, pointing out that Bell was the only African American in the pool, and that the prosecutor had not asked Bell any individual questions. (R. 60:24.) The trial judge, conducting the *Batson* hearing in his chambers, confirmed the observations of Lamon's attorney, and asked the prosecutor to explain why she struck Bell. (R. 60:25.)

The prosecutor provided several reasons. First, "Bell" was a well-known criminal name in Beloit. (R. 60:25.) Second, Bell's address was in a high crime area. The prosecutor pointed out that a police report showed numerous police contacts at Bell's address, ranging from civil process to stolen vehicle complaints. (R. 60:25-26.) Specifically, the prosecutor was concerned one of Bell's family members had been involved in a stolen car incident. (R. 60:29.) Third, the prosecutor noted that Bell had indicated on his juror card that his employment for the past five years "varies." (R. 60:26.) This answer, according to the prosecutor, affected the State's opinion of whether Bell would be a responsible juror. (R. 60:26-27.)

2

After hearing these race neutral reasons, the trial court allowed the defendant's attorney to respond. Lamon's attorney argued that "Bell" was a common name, so the prosecutor could not conclude that Bell was related to those individuals who had committed a crime or had contact with the District Attorney's office. (R. 60:27.) The defense attorney also pointed out that Bell did not respond to the prosecutor's question to the venire pool whether anyone had relatives who had committed crimes or had contacts with the District Office, nor had the prosecutor asked Bell individually these questions either. (R. 60:27.) The defense attorney specifically asked the court to individually voir dire Bell to see if the prosecutor's concerns were valid. (R. 60:29.)

The trial court then asked the prosecutor why she did not make a specific inquiry of Bell regarding these matters. (R. 60:29.) The prosecutor responded that the police report spoke for itself, and that she did not want to single out Bell. (R. 60:29.) She also doubted that Bell would answer honestly given that he did not raise his hand to some of the earlier questions. (R. 60:30.)

After hearing these arguments, the trial court overruled the defendant's *Batson* challenge, stating, "Well, I think the State has made its case and it does have just cause for the strike." (R. 60:30.)

On April 15, 1999, the jury found Lamon guilty of armed robbery. On May 24, 1999, Lamon pled guilty to the charge of repeat offender and was sentenced to an indeterminate prison term not to exceed 20 years.

3

Lamon exhausted her post-conviction remedies in state court, and now seeks habeas relief from this Court.

## STANDARD OF REVIEW

A petitioner is entitled to a writ of habeas corpus only if the challenged state court decision is either "contrary to" or is "an unreasonable application of" clearly established federal law as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d)(1). A state court's decision is "contrary to" clearly established Supreme Court law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [that Supreme Court precedent]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000). A state court's decision is "an unreasonable application of" clearly established federal law if the court's decision is "objectively" unreasonable, *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003), and lies "well outside the boundaries of permissible differences of opinion." *Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002).

## DISCUSSION

Lamon's § 2254 petition is based solely on her contention that the State improperly struck a juror in violation of the test established in *Batson v. Kentucky*, 476 U.S. 79 (1986). The Supreme Court in *Batson* established a three-step process for evaluating such claims. First, the defendant must make a prima facie showing that the prosecutor has exercised

4

peremptory challenges on the basis of race. *Id.* at 96-97. Second, if the requisite showing has been made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question. *Id.* at 97-98. Finally, the trial court must determine whether the defendant met his burden proving that the prosecutor purposefully discriminated on the basis of race. *Id.* at 98. That is, regarding this final step, the trial court must determine whether the prosecutor's race-neutral reasons are pretextual for intentional discrimination. The Petitioner's claim asks the Court only to consider the final step of the *Batson* inquiry.

A trial court's decision on the ultimate question of whether a prosecutor acted with discriminatory intent is a finding of fact that this Court reviews with great deference. *Hernandez v. New York*, 500 U.S. 352, 364 (1991) (plurality opinion); *id.* at 372 (O'Connor, J., joined by Scalia, J., concurring in the judgment). On federal habeas review, the factual findings of a state trial court "shall be presumed to be correct," 28 U.S.C. § 2254(e)(1), and thus, this Court can only overturn such a factual finding if the finding is clearly erroneous. *Williams v. Chrans*, 957 F.2d 487, 490 (7th Cir.), *cert. denied*, 506 U.S. 998 (1992). The deferential standard of review is particularly appropriate in a *Batson* challenge, because the trial court's finding "largely will turn on evaluation of credibility." *Batson*, 476 U.S. at 98 n.21.

Lamon contends, though, that an evidentiary hearing and further discovery is necessary because the state trial judge never asked Bell any individual questions to test the accuracy of the prosecutor's stated concerns. However, such an inquiry of Bell would have been wholly

5

irrelevant in this context. The question in step three of the *Batson* test is whether the prosecutor acted with a discriminatory intent. Thus, as the Supreme Court stated in *Hernandez*, "the decisive question will be whether counsel's race-neutral explanation for a peremptory challenge should be believed." 500 U.S. at 365. "There will seldom be much evidence bearing on that issue, and the best evidence often will be the demeanor of the attorney who exercises the challenge." *Id.* The state trial judge was able to evaluate the demeanor of the prosecutor in his chambers during the *Batson* hearing, and questioning Bell would not have aided the trial court in its evaluation of the prosecutor's intent and credibility. An evidentiary hearing and further discovery on whether Bell actually did have relatives involved in the criminal justice system would add nothing to the Court's analysis of the *Batson* claim.

Moreover, the prosecutor's stated reason for the strike "need not be particularly persuasive, or even based on quantifiable data, so long as it is not pretextual." *United States v. George*, 363 F.3d 666, 674 (7th Cir. 2004). In reviewing the state court record, the Court finds no evidence that the prosecutor's proffered reasons were pretextual. The prosecutor presented the state trial court a police report documenting the numerous police contacts at Bell's address, which supported the prosecutor's stated concern of Bell having relatives involved in the criminal justice system. Such a reason is a valid, race-neutral reason for exercising a peremptory challenge, *see United States v. Hughes*, 970 F.2d 227, 231 (7th Cir.

1992), and the Court finds no evidence that it was merely a pretext to discriminate against Bell on account of his race.

Lamon contends, though, that the Court should allow her to pursue discovery to ascertain whether the prosecutor obtained police reports for the other venire persons. The Court finds no "good cause" to authorize discovery of this kind. *See* Rule Governing Section 2254 Cases, Rule 6(a). First, Lamon never made such an inquiry during the original *Batson* hearing before the state court. *See, e.g., Keeney v. Tamayo-Reyes*, 504 U.S. 1, 9 (1992) ("It is hardly a good use of scarce judicial resources to duplicate factfinding in a federal court merely because a petitioner has negligently failed to take advantage of opportunities in state-court proceedings."). Second, discovery of this kind would not aid the Court in its adjudication of the *Batson* claim. *See Hubanks v. Frank*, 392 F.3d 926, 933 (7th Cir. 2004) ("Good cause . . . cannot exist where the facts alleged do not provide a basis for relief."). Even if the prosecutor did not obtain police reports on the other jurors, her actions would have been justified by valid, race-neutral reasons. Specifically, "Bell" was a well known criminal name in Beloit, and Bell lived in a high crime neighborhood. So, discovery of whether other police reports were conducted for other venire persons would be neither relevant nor helpful to Lamon's petition, and hence, there is no "good cause" to authorize further discovery in this matter.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT**

(1) Lamon's Motion for Hearing is **DENIED.**

(2) Lamon's Motion for Discovery is **DENIED.**

(3) Lamon's Petition for Writ of Habeas Corpus is **DENIED.**

Dated at Milwaukee, Wisconsin, this 23rd day of August, 2005.

**SO ORDERED,**

s/ Rudolph T. Randa

**HON. RUDOLPH T. RANDA**
Chief Judge